Paul S. Banales, Esq.
**Law Office of Paul S. Banales**
2996 East Greenlee Street
Tucson, Arizona 85716
Tel: (520) 405-3135
Fax: (520) 300-1462
AZ Bar No.: 004313
Pima Co. Bar No.: 2560
E-mail: psbanales@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Otto Schwake,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Arizona Board of Regents; Michael M. Crow; Kevin Cook; Norean Sablan; Dawn Russo; Ron Hicks; Gregory Castle; and Thomas Seager<br><br>　　　　Defendants. | Case No. CV15-00696-PHX-SPL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

On July 26, 2017, the Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Their motion should be denied because, as further explained below, the Plaintiff's Complaint sets forth sufficient facts to support the elements of his claims.

**I. Legal Standard**

When considering a motion to dismiss for failure to state a claim, a court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir.2016). The complaint is then dismissed only if it fails to state a claim that is plausible on its face. *Id.*; *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F.Supp.2d. 1377 (D. Ariz. 1993)

(complaint should be dismissed for failure to state claim when, accepting all well-pleaded allegations of fact as true, and drawing all reasonable inferences in favor of plaintiff, no relief could be granted under any set of facts that might be proved). A complaint need not contain detailed factual allegations to present facial plausibility. *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Instead, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gilmore v. DJO Inc.*, 663 F.Supp.2d 856, 859 (D. Ariz. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

The District Court's role is therefore a limited one, "confined to evaluating 'not whether a plaintiff will ultimately prevail,' but 'whether the claimant is entitled to offer evidence to support the claims.' *Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1001 (D. Ariz. 2004) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds*, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A complaint containing allegations which, if proven, "present a winning case is not subject to dismissal under 12(b)(6), no matter how unlikely such winning outcome may appear to the district court." *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 791 (9th Cir. 2011); *Lazarescu v. Arizona State Univ.*, 230 F.R.D. 596, 600 (D. Ariz. 2005).

**II. Defendants Attempt to Introduce Extrinsic Materials**

As with their prior Motion to Dismiss, the Defendants once again attempt to have this Court consider materials outside the pleadings in its Rule 12(b)(6) motion. As a general rule, a court may not consider such materials when ruling on such a motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Ninth Circuit has recognized exceptions to this general rule, but none apply in the case at bar. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice). None of the exhibits attached to the Motion to Dismiss were attached to the

Complaint. Because the Complaint neither "refers extensively to the document "nor does the document form "the basis of the plaintiff's claim," the incorporation by reference exception does not apply. *Id.* Finally, none of the materials are matters of public record suitable for judicial notice. Accordingly, the Plaintiff objects to the consideration of these materials as part of the Defendants' Motion to Dismiss under Rule 12(b)(6).

### III. Defendants Are Not Entitled to Dismissal of Plaintiff's § 1983 Claims Based Upon Qualified Immunity

Whether the individual Defendants are entitled to qualified immunity with respect to the Plaintiff's § 1983 claims involves a two-part inquiry. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011). The court must determine "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right." *Id.* The court must also ask whether that right was clearly established given the context of the case. *Id.* As with other questions before a court on a motion to dismiss, a court determining immunity "must accept the allegations in the plaintiff's complaint as true." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999). Dismissal is, therefore, "not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

    a. Due Process Violations

        i. Constitutionally Protected Interest

A procedural due process claim "has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The Defendants challenge both of these elements in the case at bar. With respect to the constitutionally protected property interest, the Defendants suggest that the Plaintiff has no protected interest in access to the lab, unrestricted access to the campus, or post-doctoral research at ASU. *See* Defs.' Mot. to Dismiss ("Mot.") at 6. Moreover, the Defendants argue claims of a loss of reputation are equally insufficient. *Id.*

The Defendants mischaracterize the Plaintiff's claims in the case at bar, zeroing in on the methods used to deny protected interests rather than recognizing the interest itself. Courts both within and without the Ninth Circuit recognize a constitutionally protected property interest in continued enrollment at a public institution of higher learning. *See, e.g.*, *Hunger v. Univ. of Hawaii*, 927 F.Supp.2d 1007, 1016 (D. Haw. 2013); *Doe v. The Ohio State Univ.*, 136 F.Supp.3d 854, 865 (S.D. Ohio 2016) (disciplinary processes of universities typically implicate the Due Process Clause because they have the potential to deprive a student of either the liberty interest in reputation or the property interest in education benefits temporarily denied); *Doe v. Baum*, 227 F.Supp.3d 784, 796 (E.D. Mich. 2017) (student, who was found to have violated public university's sexual misconduct policy and withdrew from school in lieu of a formal expulsion, had protected property interest in finishing his degree program and preserving his reputation against claimed policy violation, as required to state procedural due process claim). The letter that was received from Defendant Norean Sablan informed the Plaintiff that he was suspended "effective immediately." Compl. ¶ 42. The Defendants greatly hampered the Plaintiff's research and significantly impacted his ability to complete and defend his thesis. *Id.* at ¶¶ 66-70 (effect on lab work), ¶ 88 (Plaintiff's graduation application forcibly removed), ¶¶ 97-98 (difficulty in completing work and continued effects), ¶ 107 (Plaintiff temporarily deprived of his education and research at ASU).

The Complaint also provides how the Defendants' actions have made it nearly impossible for the Plaintiff to continue in his chosen profession. Compl. at ¶¶ 98-100 (research and funding opportunities ground to a halt), ¶¶103-106 (Plaintiff forced to cancel research collaborations and branded unreliable both personally and professionally with little chance of restarting career). Federal courts have routinely noted that "it is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66 n.4 (9th Cir. 1994) (collecting cases); *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 981 (9th Cir. 2002) (state may not deprive person

of freedom to engage in any of the common occupations of life without due process); *Purvis v. Oest*, 614 F.3d 713, 718 (7th Cir. 2010) ("It is well established . . . that a person has a liberty interest to pursue employment in her chosen field."); *Thomas v. Indep. Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (the liberty to pursue a calling or occupation is secured by the Due Process Clause of the Fourteenth Amendment).

The Defendants are correct that a claim for damage to reputation alone may be deemed insufficient. *See Paul v. Davis*, 424 U.S. 693, 711, 96 S. Ct. 1155, 1165, 47 L. Ed. 2d 405 (1976). As previously noted, however, the Plaintiff does not allege merely damage to his reputation. Instead, the Complaint explains how that damage to his reputation has decimated his hopes of continuing in his chosen field. Compl. ¶¶ 104-106. This type of "stigma-plus" damage has been recognized by federal courts. *See Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013) (liberty interests protected by the Fourteenth Amendment are implicated when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession); *Homoky v. Ogden*, 816 F.3d 448, 454 (7th Cir. 2016) (a stigma-plus due process claim arises when defamatory statements alter or extinguish a right or status previously recognized such as when an employee's good name, reputation, honor, or integrity is called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field); *Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014) (reputational harm, coupled with some more tangible interests such as employment, can together be sufficient to invoke the procedural protection of the Due Process Clause). Because the Complaint sets out sufficient allegations of the deprivation of a constitutionally protected right, the focus for the Court shifts to the allegations regarding the procedures provided.

    ii. Inadequate Procedures

In *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), relied upon by the Defendants, the Supreme Court noted that "[a]t the very minimum . . . students facing suspension and the consequent interference with a protected property interest must

5

be given some kind of notice and afforded some kind of hearing." *Id.* at 579, 95 S. Ct. at 738. The Court clearly limited that statement, however, when it observed that

> [w]e should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures. Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required.

*Id.* at 584, 95 S. Ct. at 741. This limitation is consistent with subsequent cases that have explained that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)); *see also Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017); *Cummins v. Barnhart*, 460 F. Supp. 2d 1112, 1120 (D. Ariz. 2006), *aff'd sub nom. Cummins v. Soc. Sec. Admin.*, 280 F. App'x 634 (9th Cir. 2008).

The allegations in the Complaint make it clear that the Plaintiff was never provided with an opportunity to be heard in a meaningful time and in a meaningful manner. After a generic notice of allegations of "multiple instances of inappropriate behaviors," the Plaintiff was given a no-contact letter which immediately prevented the Plaintiff from attending seminars and conferences as well affecting his ability to engage in his lab work and research. Compl. ¶¶ 29-32, 36-37. While the Plaintiff had meetings with various Defendants, these meetings were not themselves an opportunity to be meaningfully heard and instead focused on the promise of such an opportunity in the future. *See, e.g.*, Compl. ¶¶ 34-35 (Plaintiff was refused a copy of complaint and instead encouraged to prepare evidence and witnesses in his defense); ¶¶ 39-41 (Plaintiff still refused documentation and is instead requested to draft a document outlining some of the more serious allegations). When the letter of suspension was sent to the Plaintiff, he had still not been provided with an opportunity to provide neither evidence and witnesses nor with his side of the story with respect to the remaining accusations. *Id.* ¶ 42. This letter did note that the Plaintiff would have an opportunity to request a hearing and finally be provided a meaningful

opportunity to be heard. *Id.* at ¶ 43. But shortly after receiving notice of his hearing, *Id.* at ¶ 82, the Defendants altered the Plaintiff's punishment so that the hearing would no longer be afforded to him. ¶¶ 92-94.

These failings in the case at bar distinguish it from those cited by the Defendants. In *Gomes v. University of Maine System*, 365 F.Supp.2d 6 (D.Me. 2005), the accused was able to present and cross-examine witnesses. *See Id.* at 23. Similar rights were granted in *Foo v. Trustees, Indiana University*, 88 F.Supp.2d 937, 945 (S.D. Ind. 1999). The accused was initially informed that he possessed the right to be represented by counsel, a right to call witnesses and to cross-examine those who appear, *Id.* at 945, he also received a copy of the police report containing the evidence against him. *Id.* at 950; *see also Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (while accused were not allowed to ask questions directly of the adverse witnesses at the hearing, they heard all of the testimonies against them and were told they could pose questions of the accusing witnesses by directing their questions to the presiding board chancellor, who would then direct them to the witnesses).

### iii. Substantive Due Process

The Defendants also challenge any claims for violations of substantive due process. In doing so, however, the Defendants do admit that "the Due Process Clause provides *procedural* protections that cover school discipline." Mot. at 9 (emphasis in original). The case cited by the Defendants, *C.R. v. Eugene School District 4J*, 835 F.3d 1142 (9th Cir. 2016), *cert. denied,* 137 S. Ct. 2117, 198 L. Ed. 2d 197 (2017), the Ninth Circuit did not foreclose the ability to allege a substantive due process violation with respect to a disciplinary suspension. In that case, the court merely noted that "C.R. fails to show that he has a substantive due process interest in maintaining a clean, non-stigmatizing school disciplinary record," *Id.*at 1154, explaining that "[t]here is no reason why a school should not be permitted to record the reason for a student's suspension, however unsavory, so long as it applied the appropriate procedural safeguards while pursuing its investigation." *Id.*

The Ninth Circuit has explained that "substantive due process protects individuals

from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). Accordingly, "the alleged deprivation must 'shock the conscience and offend the community's sense of fair play and decency." *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013) (quoting *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012)). The one-sided nature of the proceedings against the Plaintiff, with the promise of procedural safeguards continually dangled in front of the Plaintiff while ultimately being ripped away at the last moment cannot be said to do other than offend any sense of fair play and decency.

    b.  Right to Privacy Violations

The Ninth Circuit has recognized that "the Constitution protects an 'individual interest in avoiding disclosure of personal matters.'" *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 877 (9th Cir. 2008) (quoting *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)). While the Supreme Court reversed and remanded the Ninth Circuit, it did so without overturning the recognition of this right. *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 138, 131 S. Ct. 746, 751, 178 L. Ed. 2d 667 (2011) ("We assume, without deciding, that the Constitution protects a privacy right. . . ."). The Ninth Circuit's holding with respect to that right therefore remains good law and continues to be cited by courts within the circuit. *See, e.g.*, *Ismail v. Fulkerson*, No. SA CV 10-00901-VBF, 2014 WL 3962488, at *7 (C.D. Cal. Aug. 12, 2014), *aff'd sub nom. Ismail v. Cnty. of Orange*, No. 14-56486, 2017 WL 2211266 (9th Cir. May 19, 2017) (noting that the Supreme Court left intact the Ninth Circuit's holdings that the Constitution protects an individual interest in avoiding disclosure of a wide range of personal matters).

The Defendants next argue that the alleged disclosure of the Plaintiff's private information is "pure conjecture." Mot. at 10. The Complaint alleges, however, that Defendant Thomas Seager went into "great detail" in his discussions of the accusations against the Plaintiff and his disciplinary process. Compl. ¶¶ 47-49, 55. The extent of the disclosure reached the point that both students and other faculty began lodging complaints. *Id.*¶¶ 50-52, 56. Despite these complaints, the disclosure continued. *Id.*¶¶ 54, 57.

Moreover, the Complaint alleges that the detailed nature of information disclosed was such that Seager could only have obtained it from those involved in the disciplinary process. *Id.*¶ 58.

At the motion to dismiss stage, the court must accept these factual allegations as true. *Schueneman*, 840 F.3d at 704; *Morley*, 175 F.3d at 759. The Court must also draw all reasonable inferences in the Plaintiff's favor. *In re Am. Cont'l Corp*, 845 F.Supp.2d at 1383. Even without the Plaintiff's allegation regarding the source of the information, the court could reasonably infer that the detailed accounts of the accusations and the disciplinary proceedings divulged by Seager were rooted in disclosures made by the Defendants.

### c. Clearly Established Law

In their final challenge to the Plaintiff's § 1983 claims, the Defendants suggest that they have not violated clearly established law. As the Defendants correctly note, "conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (alterations in original). In the case at bar, a reasonable official in the Defendants' positions would have understood that he or she was violating the Plaintiff's rights. With respect to the procedural due process violations suffered by the Plaintiff, federal courts have long recognized the rights of which the Plaintiff was deprived. *See, e.g.*, *Wedges/Ledges of California, Inc.*, 24 F.3d at 66 n.4 ("[It] is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations."); *Ulrich*, 308 F.3d at 982 (noting that the "stigma-plus" test derives from the Supreme Court's ruling in *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)).

Similarly, the fundamental requirement of an opportunity to be heard at a meaningful time and in a meaningful manner has long been recognized. *See Mathews*, 424 U.S. at

333, 96 S. Ct. at 902. The cases cited by the Defendants do not address such a basic failing in the procedures challenged. *See, e.g.*, *Doe v. Univ. of Cincinnati*, 173 F.Supp. 3d 586, 606 (S.D. Ohio 2016) (challenges include burden of proof and use of hearsay evidence); *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 971 (9th Cir. 2010) (allegations of solely reputational harm or "psychological trauma" are insufficient and the court could therefore easily conclude that the law was not clearly established at the time so as to put a reasonable official on notice that the actions might violate the constitution).

The right to privacy is also clearly established. Despite any suggestion to the contrary, the Ninth Circuit's holding in *Nelson* remains in effect. Moreover, cases cited by the Defendants are readily distinguishable. For example, in granting qualified immunity, the court in *Ismail v. County of Orange*, No. 14-56486, 2017 WL 2211266 (9th Cir. May 19, 2017) noted that the request for disclosure was "accompanied by an order from the Orange County Superior Court" and that the official made the disclosure "after seeking advice from the County Counsel." *Id.* at *3. Those facts, which permitted the court to find that a reasonable social worker would not have understood that it would be a violation to comply with the order. *Id.* Such compelling facts are simply not present in the case at bar.

Assuming the facts alleged in the Complaint as true, it demonstrates the deprivation of recognized property and liberty interests and the denial of adequate procedures before such deprivation. The rights violated were clearly established at the time of the Defendants actions. Accordingly, the Defendants are not entitled to qualified immunity.

**IV. Plaintiff Has Set Forth Sufficient Facts to Establish a Plausible Claim Under Title IX**

The Defendants' challenge to the Plaintiff's Title IX claim focuses primarily on the requirement that a pleading show that gender bias was a source of the alleged deprivation. Mot. at 13 (quoting *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, No. 16-CV-1789-WJM-KLM, 2017 WL 2311209, at *7 (D. Colo. May 26,

2017)); *see also Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994) (student attacking university disciplinary proceeding on grounds of gender bias claiming that erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on accuracy of outcome of disciplinary proceeding). In *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), the Second Circuit recently addressed a challenge to the sufficiency of a complaint. In ruling that the complaint set forth sufficient allegations, the court noted that it contained allegations that "the investigator and the panel declined to seek out potential witnesses Plaintiff had identified as sources of information favorable to him" as well as that "[t]he investigator, the panel, and the reviewing Dean, furthermore, reached conclusions that were incorrect and contrary to the weight of the evidence." *Id.* at 56-57. The court explained that "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." *Id.* at 57. Accordingly, "the facts pleaded in the Complaint (which we must accept in the light most favorable to Plaintiff) support John Doe's version (not surprisingly as they represent his contentions)." *Id.* These allegations, coupled with allegations of the University's knowledge and concerns about criticism for not taking prior allegations of sexual assault seriously made it "entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Id.*

The present Complaint contains similar accusations. As in *Doe*, the investigation was marred by the Defendants' ignoring of witnesses and evidence collected by the Plaintiff (despite encouraging him to obtain them). Compl. ¶¶ 34, 42, 125. When an accusation that the Plaintiff had violated the no-contact order was lodged, vital evidence was ignored (despite knowledge of its existence) until the Plaintiff went to the expense of obtaining it. *Id.*¶¶ 80-81.When the Plaintiff expressed a desire to file his own complaint, he was

11

discouraged from doing so, though the Defendants later denied this, and was ultimately threatened that lodging such a complaint "could 'lead to further investigations' resulting in additional sanctions against the Plaintiff, including degree revocation." *Id.*¶ 95. These deficiencies led to a decision against the weight of evidence. *Id.*¶ 126. Moreover, the Plaintiff's is not an isolated case, rather another in a series of disciplinary cases against male respondents in alleged sexual misconduct cases. *Id.*¶ 131. Such issues resulted in an investigation of ASU by the Department of Education. *Id.*¶ 27.

The cases cited by the Defendants lacked the allegations contained in the case at bar. In *Doe v. University of Colorado*, for example, a plausible inference of bias was missing where the facts demonstrated that two female victims and ten witnesses, including seven males, provided information against the accused student while he failed to provide names of favorable witnesses, refused to provide his version of events, and failed to rebut witness accounts. 2017 WL 2311209, at *12. Similarly, in *Doe v. Baum*, 227 F. Supp. 3d 784 (E.D. Mich. 2017), the accused "never pointed to any information or witnesses in his favor that he contends were not developed in the record or presented to the investigator and appeal panel." *Id.* at 819. As damaging for the plaintiff in *Baum*, he had not identified any decisions in other cases tending to suggest any gender-biased pattern of decision making by University officials, nor "pointed to any information to suggest that the University has handled complaints of sexual misconduct against female students in any way differently than it handles those against male students." *Id.* at 819-20. Given that the Plaintiff has made some of the very factual allegations that the plaintiffs in these cases merely highlight that the Complaint contains sufficient factual allegations to show that gender bias was a source of the Plaintiff's deprivations.

**V. Conclusion**

For the foregoing reasons, the Defendants' Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) should be denied.

RESPECTFULLY SUBMITTED this 8th day of August, 2017.

/s/ Paul S. Banales
Paul S. Banales, Esq.
**Law Office of Paul S. Banales**
2996 East Greenlee Street
Tucson, Arizona 85716
Tel: (520) 405-3135
AZ Bar No.: 004313
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing response was electronically filed with the Clerk of Court using the CM/ECF system and Counsel for Defendants will automatically receive notice of such filing in accordance with the Federal Rules of Civil Procedure.

/s/ Paul S. Banales
Paul S. Banales, Esq.
**Law Office of Paul S. Banales**
2996 East Greenlee Street
Tucson, Arizona 85716
Tel: (520) 405-3135
AZ Bar No.: 004313
Attorney for Plaintiff