**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Otto Schwake, | No. CV-15-00696-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Arizona Board of Regents, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss. (Doc. 49.) For the reasons set forth below, the motion is granted.

**I.     Background**

Plaintiff David Otto Schwake was a graduate student at Arizona State University ("ASU") pursuing a Ph.D. in microbiology. (Doc. 47 at 2.) "Plaintiff has become well known in his field as a promising up and coming young researcher whose work has been featured in hundreds of local, national and international news outlets." (*Id.* at 3.) Plaintiff worked in the laboratory of Dr. Morteza Abbaszadegan as a graduate student researcher from March 2011 until December 2014. (*Id.* at 2-3.) Plaintiff worked regularly in Dr. Abbaszadegan's laboratory with other Ph.D. students, including Lauren McBurnett. (*Id.* at 3.) According to Plaintiff, he and McBurnett had "a relationship that oscillated between being professional coworkers and dozens of romantic encounters." (*Id.*)

On August 14, 2014, Plaintiff received a first notice letter from Defendant Norean Sablan stating that ASU's Office of Students Rights and Responsibilities had received a

complaint from McBurnett and that the following disciplinary charges were pending against Plaintiff, including (1) "failure to comply with directions of university officials or agents"; (2) "engaging in unwanted repeated or significant behavior toward another individual"; and (3) "sexual misconduct." (*Id.* at 4.) The letter also included a "no-contact directive" with McBurnett that Plaintiff was to abide by. (*Id.*) Plaintiff met with Defendant Sablean the following day, at which time she "merely summarized the complaint verbally." (*Id.* at 5.) Plaintiff was told that the no-contact directive included attendance at seminars or conferences which McBurnett would be attending. (*Id.*) Dr. Abbaszadegan created a lab-sharing schedule for Plaintiff and McBurnett that would allow Plaintiff to continue his research while abiding by the no-contact directive. (*Id.*) A second meeting with Defendant Sablan on August 22, 2014 focused on the sexual misconduct allegations against Plaintiff. (*Id.*) At Defendant Sablan's request, Plaintiff provided her "with a four page document entitled 'The Event' which presented his side of the most serious allegations from that [sic] that he touched her breasts without her consent while she was asleep sometime between March 26 and 27, 2014." (*Id.* at 6.) Plaintiff maintains that his "intimate contacts" with McBurnett were consensual. (*Id.*)

On September 5, 2014, Defendant Sablan informed Plaintiff "that he had been found responsible for violating all three Student Code of Conduct sections and that he was suspended until Fall 2017 effective immediately." (*Id.*) In the wake of Plaintiff's suspension, Plaintiff alleges that Defendant Thomas Seager, a professor at ASU, repeatedly discussed Plaintiff's disciplinary case with other students. (*Id.* at 7.) Plaintiff's counsel informed ASU's Dean of Students, Defendant Kevin Cook, on October 2, 2014 that Plaintiff sought "a hearing to review the finding of responsibility and the sanction of suspension." (*Id.* at 8.) Defendant Castle, a professor at ASU, emailed Plaintiff questions regarding his upcoming hearing on October 12, but acknowledged in his subsequent response that he knew Plaintiff was represented by counsel on the matter. (*Id.* at 8.) On October 14, 2014, McBurnett obtained an injunction against harassment against Plaintiff in the San Marcos Justice Court. (*Id.* at 9.) Plaintiff was served with the injunction a few

days later while at a tailgate party at which both Plaintiff and McBurnett were present. (*Id.*) On October 16, Plaintiff "was removed from the lab without warning or explanation." (*Id.*) Two days later, Plaintiff e-mailed Dr. Abbaszadegan and requested that he relay a message to administration requesting that Plaintiff be given access to the lab. (*Id.* at 10.) Plaintiff was placed on interim suspension on November 3 by Defendant Hicks—Associate Dean of Students at ASU—after it had been reported that he had been at the lab on October 20, which "if found to be true, violated two [additional] provisions of the ABOR Student Code of Conduct." (*Id.*)

Plaintiff's hearing on the matter was scheduled for December 12, 2014. (*Id.* at 11.) On December 3, Defendant Hicks informed Plaintiff that a "mutually beneficial compromise" had been reached to allow Plaintiff to finish his degree and graduate. (*Id.* at 12.) Rather than suspension until fall 2017, Plaintiff would be allowed to graduate but a three-year campus access restriction to the lab would be in effect and Plaintiff would not be allowed to hold any post-doctoral, paid, or volunteer positions until spring 2018. (*Id.* at 12-13.) Plaintiff was told the decision was final and that there would be no hearing or appeals process because it did "not involve a suspension, expulsion, or degree revocation." (*Id.* at 13.) Plaintiff did, in fact, graduate from ASU. (*Id.* at 14.)

Plaintiff alleges that Defendants' actions "halted Plaintiff's career at a critical time for a young scientist establishing himself in his field of research" and have left him severely disadvantaged in terms of securing future grant funding, future employment prospects, and hampered his ability to publish academic scholarship. (*Id.*) Specifically, Plaintiff alleges that Defendants' actions have compromised his reputation as a reliable scholar because he was forced to cancel collaborations with other researchers as a result of his campus access restrictions and inability to complete his post-doctoral position in Dr. Abbaszadegan's lab at ASU. (*Id.* at 15.)

In connection with the events described, Plaintiff has filed suit against the following entities and individuals: Arizona Board of Regents ("ABOR"), in its official capacity; Michael M. Crow in his official capacity as the President of ASU; Kevin Cook

3

in his official capacity as the Dean of Students at ASU; Norean Sablan in her official capacity as a Coordinator for the Office of Student Rights and Responsibilities at ASU and in her personal capacity; Ron Hicks in his official capacity as Associate Dean of Students at ASU and in his personal capacity; Gregory Castle in his official capacity as a professor at ASU and in his personal capacity; and Thomas Seager in his official capacity as a professor at ASU and in his personal capacity (collectively, "Defendants"). (Doc. 47 at 2.) Plaintiff seeks $20 million in compensatory damages and punitive damages. (*Id.* at 20.)

## II. Standard of Review

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint for failure to state a claim under Federal Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacificia Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Although a complaint "does not need detailed factual allegations," a plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*

In deciding a motion to dismiss the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, *id.*, and "are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (internal citation omitted). A plaintiff need not prove the case on the pleadings to survive a motion to dismiss. *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012).

### III. Discussion

#### A. Count I: 42 U.S.C. § 1983

Plaintiff's claims under 42 U.S.C. § 1983 can be summarized as follows: (1) Defendants Sablan and Hicks violated Plaintiff's liberty and property interests in his reputation, education, and profession when they banned him from the lab on August 14; (2) Defendant Sablan and Hicks violated Plaintiff's substantive and procedural due process rights when they banned Plaintiff from the lab; (3) Defendant Hicks' actions regarding Plaintiff's hearing and the lack of an appeal process violated Defendant Arizona Board of Regents' Student Code of Conduct disciplinary procedures and violated Plaintiff's substantive and procedural due process rights; (4) Defendant Castle violated Plaintiff's substantive and procedural due process rights by communicating with Plaintiff when he was represented by counsel; and (5) Defendants Sablan, Hicks, Castle, and Seager violated Plaintiff's right to privacy when they communicated confidential information about Plaintiff to others. (Doc. 47 at 16-18.) Defendants have moved to dismiss under the theory that they are entitled to qualified immunity. Because qualified immunity bears prominently on the outcome of Plaintiff's section 1983 claims, the Court will address it first.[1]

---

[1] Qualified immunity analyses are difficult—and not always appropriate—at the motion to dismiss stage because of the undeveloped record before the Court. *Hernandez*

5

More than a mere defense to liability, the doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a government official is entitled qualified immunity, a court must consider: (1) whether the official violated the plaintiff's constitutional rights; and (2) whether the right was clearly established at the time of the incident. *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (citing *al-Kidd*, 563 U.S. at 731). Courts exercise the discretion to determine which prong of the analysis to complete first. *Id.* (citing *Pearson*, 555 U.S. at 236). Moreover, courts are allowed to grant officials qualified immunity after completing only the second prong of the analysis "without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Pearson*, 555 U.S. at 227).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Clearly established law should not be defined at a "high level of generality." *Id.* at 742.

### 1. Due process

The Due Process Clause of the Fourteenth Amendment states, "[Nor] shall any State deprive any person of life, liberty, or property without due process of law." *Sagana v. Tenorio*, 384 F.3d 731, 742 (9th Cir. 2004) (citing U.S. Const. amend. XIV, § 1). To state a substantive or procedural due process claim, a recognized property or liberty

---

*v. Ryan*, No. CV-09-2683-PHX-DGC, 2010 WL 4537975, at *2 (D. Ariz. Nov. 3, 2010). Dismissal is only appropriate, such as here, where the applicability of qualified immunity is apparent from the face of the complaint. *Id.* (internal citation omitted).

6

interest at stake must be identified. *Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009); *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014). Property interests are not created by the Constitution itself, but rather are "defined by existing rules or understandings that stem from an independent source such as state law." *Guillen-Cervantes*, 748 F.3d at 872 (9th Cir. 2014) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). "But the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-570 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of *entitlement* to it." *Blantz v. Cal. Dep't of Corr., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013) (citing *Roth*, 408 U.S. at 577).

First, Plaintiff cannot claim that he was entitled to access the laboratory on ASU's campus. Plaintiff has not directed the Court to any law, regulation, or policy that has bestowed him with such a property interest. *Blantz*, 727 F.3d at 922 (internal citation omitted). Just because Plaintiff assumed that he would always have access to ASU's laboratory does not make it so. Following the reasoning set forth in *Souders v. Lucero*, the Court finds that Plaintiff has no constitutionally protected interest in having unrestricted access to ASU's campus or to its lab in particular. 196 F.3d 1040, 1045-46 (9th Cir. 1999) (holding that alumnus banned from college campus because of stalking behavior did not have a constitutionally protected interest in having access to campus).

"[I]njury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution." *Ulrich v. City & Cty. of S.F.*, 308 F.3d 968, 982 (9th Cir. 2002) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Plaintiff acknowledges the insufficiency of alleging mere damage to reputation (Doc. 50 at 5), but alleges that Defendants Sablan and Hicks' actions, as detailed in his First Amended Complaint, "explains how that damage to his reputation has decimated his hopes of continuing in his chosen field." (*Id.*) Plaintiff relies on *Blantz* for the proposition that his allegations qualify for the so-called "stigma-plus" test, that is—"liberty interests protected by the

Fourteenth Amendment are implicated when the government's stigmatizing statements effectively *exclude the employee completely from her chosen profession.*" *Blantz*, 727 F.3d at 925 (emphasis added). Yet Plaintiff's allegations do not meet his own explanation of the stigma-plus test. Plaintiff's First Amended Complaint delves into the particulars of how Defendants' actions have allegedly compromised his ability to achieve the continued professional success he was experiencing prior to the events giving rise to this litigation, none of which amount to Plaintiff being effectively excluded completely from his profession. With respect to his reputation, no liberty interest is implicated because Plaintiff has not set forth facts demonstrating that Plaintiff's reputation has been harmed to the extent of foreclosing all opportunities in his profession. *Blantz*, 727 F.3d at 925.

Plaintiff claims that Defendants' actions have deprived him of his protected liberty interest in his profession because he was unable to work on his research at "a critical time for a young scientist establishing himself in his field of research." (Doc. 47 at 14.) Plaintiff alleges that Defendants' actions have severely disadvantaged him in applying for jobs and funding. (*Id.*) "[I]t is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations." *Wedges/Ledges of Cal. v. City of Phx., Ariz.*, 24 F.3d 56, 65 n.4 (9th Cir. 1994) (internal citations omitted). That being said, such interests are only implicated when the government's actions effectively exclude a person from their chosen profession. *Blantz*, 727 F.3d at 925. Because Plaintiff's professional opportunities were not completely foreclosed by Defendants' actions, Plaintiff's liberty interest in his profession is not implicated here.

### 2. Right to privacy

Plaintiff alleges that Defendants Sablan, Hicks, and Castle violated Plaintiff's constitutional right to privacy when they disclosed confidential information about Plaintiff's disciplinary case to Defendant Seager. (Doc. 47 at 17.) Plaintiff also alleges that Defendant Seager violated Plaintiff's right to privacy by sharing the details of his disciplinary proceedings to others in the university community. (*Id.* at 17-18.) In response

to Defendants' claim that Defendants are entitled to qualified immunity, Plaintiff maintains that the right to privacy is clearly established. (Doc. 50 at 8-10.)

"There is a constitutionally-protected privacy interest 'in avoiding disclosure of personal matters.'" *Coons v. Geithner*, No. CV-10-1714-PHX-GMS, 2012 WL 6674394, at *4 (D. Ariz. Dec. 20, 2012) (internal citation omitted). In recent decades, however, the United States Supreme Court has "said little else on the subject of an individual interest in avoiding disclosure of personal matters." *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 135 (2011) (assuming, without deciding, that the Constitution protects a right to informational privacy). In the Ninth Circuit, the right to informational privacy has been recognized in several factual circumstances. *See DeSoto v. McKay*, No. CV-16-00996-PHX-JAT, 2016 WL 7049404, at * 8 (D. Ariz. Dec. 5, 2016). "Where there is no previously recognized protected privacy interest, the Ninth Circuit has noted that if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent." *Id.* (citing *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)) (internal punctuation omitted).

Plaintiff has not directed the Court to any case or facts implicating a protected privacy interest in university disciplinary proceedings. Even assuming that such a right exists, it can hardly be argued that the contours of such a right are sufficiently clear that Defendants would have understood that their behavior violated Plaintiff's right to have information about his disciplinary proceedings withheld from other faculty members.

To conclude the discussion Plaintiff's Section 1983 claims, Plaintiff has failed to meet his burden of showing that the proposed constitutional rights at issue are clearly established. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991). Because it would not have been sufficiently clear to the Individual Defendants that their actions were violating Plaintiff's rights, *al-Kidd*, 563 U.S. at 741, the Individual Defendants are

entitled to qualified immunity on Plaintiff's claims under 42 U.S.C. § 1983.[2]

**B.    Count II: Title IX**

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A cause of action under Title IX may only be brought against the recipient of federal funds, not school officials, teachers, or other individuals. *Power ex rel. Power v. Gilbert Pub. Sch.*, No. CV-07-2584-PHX-JAT, 2009 WL 5185297, at *3 (D. Ariz. Dec. 22, 2009).[3] In the context of claims brought by disciplined students, there are two broad categories of Title IX cases: (1) selective enforcement, and (2) erroneous outcome. *Doe v. Univ. of Colo., Boulder*, 255 F.Supp.3d 1064, 1074 (D. Colo. 2017) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709-714-715 (2d Cir. 1994)). Although each theory has slightly different elements, "both require that a Plaintiff show that gender bias was a source of the deprivation." *Id.* (internal citation omitted).

In his First Amended Complaint, Plaintiff alleges that Defendant Arizona Board of Regents and Defendant ASU—through the actions of ASU's employees—violated Title IX when it discriminated against him on account of his gender. (Doc. 47 at 18.) Plaintiff maintains that throughout the events leading up to this litigation, Defendant ASU's employees "displayed a pro-female, anti-male bias." (Doc. 47 at 18.) Plaintiff further alleges that "[m]ale respondents in student disciplinary proceedings involving alleged sexual harassment and misconduct cases at Defendant ASU are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence or

---

[2] Because of the absence of constitutionally protected liberty or property interests, the Court need not turn to what procedural protections were due. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."); *see also Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017).

[3] Plaintiff's Title IX claim is dismissed with prejudice to the extent it is asserted against any of the Individual Defendants. *Currie v. Maricopa Cty. Cmty. Coll. Dist.*, No. CV-07-2093-PHX-FJM, 2008 WL 2512841, at *2 (D. Ariz. June 20, 2008).

lack thereof." (Doc. 47 at 19.)

Plaintiff directs the Court to *Doe v. Colum. Univ.*, 831 F.3d 46 (2d Cir. 2016) for the proposition that he has sufficiently pleaded facts to support a claim under Title IX. (Doc. 50 at 11.) Yet Plaintiff's allegations are conclusory and thus, insufficient to raise a plausible inference that gender bias motivated or impacted Defendants ABOR and ASU's actions. *Iqbal*, 556 U.S. at 678. Furthermore, "there remains no plausible inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender discrimination." *Austin v. Univ. of Or.*, 205 F.Supp.3d 1214, 1226 (D. Or. 2016). As such, the Court finds that Plaintiff's Title IX claim against Defendants Arizona Board of Regents and Arizona State University must be dismissed for failure to state a claim.

## IV. Conclusion

Finding that the Individual Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim and that Plaintiff has failed to state a claim under Title IX against Defendants ABOR and ASU,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 49) is **granted** and this action is **dismissed with prejudice** in its entirety.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** this case and enter judgment accordingly.

Dated this 29th day of March, 2018.

Honorable Steven P. Logan
United States District Judge